**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

NOE LEINHEISER,                                   :
                                                  :
                Plaintiff,                        :         Civ. No. 17-11642 (RBK) (AMD)
                                                  :
        v.                                        :
                                                  :
T. HOEY, et al.,                                  :         **OPINION**
                                                  :
                Defendants.                       :
_____          :

**ROBERT B. KUGLER, U.S.D.J.**

Before the Court is Defendant Newbury's motion for summary judgment pursuant to Rule
56. (ECF No. 30).  Plaintiff filed an Opposition, (ECF No. 32), and Defendant Newbury did not
file a reply.  Thereafter, the Court terminated this matter pursuant to _Paladino v. Newsome_, 885
F.3d 203 (3d Cir. 2018), to provide the parties with additional notice and an opportunity to respond
before deciding factual disputes, such as exhaustion, on summary judgment. (ECF No. 34).
Plaintiff filed submissions in response to the _Paladino_ notice, (ECF Nos. 37, 45, 46), as did
Defendant, (ECF No. 42).  For the following reasons, the Court will grant Defendant's motion for
summary judgment and deny Plaintiff's "motion to consolidate" as moot.

**I.  BACKGROUND**

As the parties are intimately familiar with the facts of this case, and because the Court has
already set forth the background of this matter in an earlier Opinion, (ECF No. 3), the Court will
only set forth the background necessary to address the instant motion, in the light most favorable
to Plaintiff.  In its earlier Opinion, this Court dismissed a substantial portion of the Complaint, but

permitted Plaintiff's claims against Defendants Newbury, T. Hoey, Ms. D, Grant, and Shakir, to proceed.  Plaintiff has only served Defendant Newbury with the Complaint.[1]

This case arises from events that occurred while Plaintiff was incarcerated at FCI Fort Dix. On October 20, 2014, while incarcerated at Fort Dix, Plaintiff received ACL reconstruction surgery on his left knee.  Defendant Shakir, a doctor of orthopedics at St. Francis Hospital, performed the surgery.

On October 22, 2014, Plaintiff went to the medical unit to have his leg dressing changed since his suture was partially torn and draining.  One week later, on October 29, 2014, Plaintiff attempted to stand up and heard a soft "pop" in his left knee joint, and his knee began to tighten and swell.

Over the next few weeks, Plaintiff's conditioned worsened for various reasons, and in the morning of November 6, 2014, Plaintiff went to "sick call" to again request treatment for his leg. Plaintiff was no longer able to walk, even with the assistance of a cane, and had to borrow a wheelchair from another inmate.  At sick call, Defendant Newbury, a nurse at the medical unit, took Plaintiff's vitals and asked what Plaintiff was experiencing.  Plaintiff provided Defendant Newbury with a brief medical history of his knee and requested to see a doctor.  Plaintiff also requested a wheelchair.

Defendant Newbury responded that only a doctor could approve Plaintiff's request for a wheelchair, but that Defendant Newbury did not see a reason for Plaintiff to visit with a doctor at that time.  Defendant Newbury advised Plaintiff that he should exercise his leg to reduce the

---

[1] Defendant Hoey passed away at some point after the filing of this Complaint. (ECF 27). Defendants Grant and Ms. D. were, but are no longer, federal employees, and it appears that Defendant Shakir has never been a federal employee.

swelling.  Defendant Newbury stated that exercise would hurt immensely and suggested that Plaintiff find a friend to help bend his legs and assist him with movement.

Upon returning to his housing unit later that day, Plaintiff decided to take a shower with the use of a borrowed wheelchair.  While seated on a bench inside the shower, Plaintiff was overcome with dizziness and anxiety, which caused him to fall off the bench.  The fall injured Plaintiff's knee and caused him to lose consciousness.  Plaintiff returned to the medical unit, was unable to see a doctor, and saw Defendant Newbury again.  Defendant Newbury did not take Plaintiff's vitals, but he did inspect Plaintiff's leg.  Defendant Newbury informed Plaintiff that he was fine and could go back to his housing unit.

On November 7, 2014, Plaintiff's leg began draining an overwhelming amount of orange-looking fluid and required bandages for seven days.  Plaintiff and his friends cleaned the wound themselves and used torn towels as makeshift bandages.  Plaintiff had been bedridden from October 29 through November 14, 2014, and repeatedly tried to see a doctor.  Finally, on November 14, 2014, Plaintiff again went to the medical unit.  At the unit, Defendant Newbury pulled the socks off of Plaintiff's feet, and the left sock was soaked with fluid and blood.  Plaintiff also saw a doctor who ordered Plaintiff to remain at Fort Dix and take Keflex for fourteen days.

As of January 2, 2015, Plaintiff had very limited use of his leg, was still in constant pain, and he was unable to move around without the use of crutches or a wheelchair.  Plaintiff saw another medical professional who could not believe the condition of Plaintiff's knee and who opined that the "incompetence of the medical staff at Ft. Dix" caused the condition.  (ECF No. 1-2, at 7).  Ultimately, a number of medical professionals recommended that Plaintiff receive total knee replacement surgery.

On January 22, 2016, Plaintiff returned to the medical unit to receive a knee brace. Defendant Newbury was present and issuing supplies at the time.  When Plaintiff requested a knee brace, Defendant Newbury informed Plaintiff that the knee braces were out of stock, had been out of stock for three weeks, and that Defendant Newbury "was not going to bother looking" for one. (*Id*. at 9).  When Plaintiff inquired when the next shipment would arrive, Defendant Newbury stated, "not for a long time." (*Id*.).

Ultimately, in September of 2017, medical professionals cancelled Plaintiff's knee replacement surgery and would revisit the issue if he lost some weight.  Soon after, Plaintiff filed the instant Complaint in November of 2017, raising deliberate indifference claims under the Eighth Amendment.  As mentioned above, in December of 2018, this Court dismissed a substantial portion of the Complaint, but permitted Plaintiff's claims against Defendants Newbury, T. Hoey, Ms. D, Grant, and Shakir to proceed.  Plaintiff, however, only served Defendant Newbury.

Defendant Newbury (hereinafter "Defendant") now moves for summary judgment, under Rule 56.  Defendant argues that summary judgment is appropriate because the statute of limitations bars Plaintiff's claims.  Additionally, Defendant contends that Plaintiff has failed to exhaust his administrative remedies and therefore, the Prison Litigation Reform Act ("PLRA") bars his claims.

## II.  STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Cotton*, 572 U.S. at 657.  The moving party bears the burden of

4

establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence that may show that genuine issues of material fact exist). The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Anderson*, 477 U.S. at 257. *Celotex*, 477 U.S. at 322. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).

## III.  DISCUSSION

### A.  Statute of Limitations and 2014 Claims

First, Defendant contends that the statute of limitations bars Plaintiff's 2014 claims. Our jurisprudence takes the statute of limitations for a *Bivens* claim from the forum state's personal injury statute. *See Hughes v. Knieblher*, 341 F. App'x 749, 752 (3d Cir. 2009) (per curiam) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993)). New Jersey's statute of limitations for personal injury actions is two years. *See* N.J. Stat. § 2A:14–2. "While state law provides the applicable statute of limitations, federal law controls when a *Bivens* claim accrues." *Peguero v. Meyer*, 520 F. App'x 58, 60 (3d Cir. 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Under federal law, a *Bivens* claims accrues when a plaintiff knows of or has reason to know of the injury. *See Hughes*, 341 F. App'x at 752 (citing *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)).

Here, Plaintiff complains of denials and delays in his medical care which may fall under the Eighth Amendment's prohibition against cruel and unusual punishment. For the delay or denial

of medical care to rise to a constitutional violation, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

Courts have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.

Courts give deference to prison medical authorities in the diagnosis and treatment of patients and will not "second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).  Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Pierce v. Pitkins,* 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam).

In the present case, Plaintiff knew of, or had reason to know of, most of his injuries traceable to Defendant, in November 2014, when he saw Defendant at the medical unit on the 6th and on the 14th.  According to Plaintiff, on each of those days, Defendant was deliberately indifferent to Plaintiff's need for a wheelchair and his excruciating pain, despite seeing the appalling condition of Plaintiff's knee.

Thus, at the latest, Plaintiff was aware of his injury and had a complete cause of action on November 6th and 14th, of 2014, respectively, as to the claims stemming from those days.

Consequently, without any tolling, the statute of limitations required Plaintiff to file a complaint raising those claims by November 6th and 14th, of 2016.

To the extent that exhausting his administrative remedies could have tolled the limitations period, the parties dispute when and if Plaintiff exhausted his administrative remedies.  Defendant contends that the Central Office denied Plaintiff's last appeal on May 28, 2015, for failing to sign the document and include the previous response. (ECF No. 30-1, at 10).  Although the Central Office gave Plaintiff leave to remedy these issues, the BOP never received an amended appeal from Plaintiff.

On the other hand, Plaintiff contends that he mailed his amended appeal on June 19, 2015, but never received a response from the Central Office.  As a result, he argues that he fully exhausted his claims 40 days later, on July 29, 2015, when the Central Office's time to respond had passed, which constitutes a denial.

Even accepting Plaintiff's version of the events and tolling the entire period between Defendant's actions and the completion of the grievance process, Plaintiff "received" a final denial on July 29, 2015.  *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015).  Consequently, the statute of limitations required[2] Plaintiff to file a complaint raising those claims by July 29, 2017.  Plaintiff, however, did not file the instant Complaint until November 6, 2017.[3]  Nor does Plaintiff set forth any facts that would justify equitable tolling of the limitations period.

---

[2] To the extent that the Court could interpret Plaintiff's claims as medical malpractice or ordinary negligence claims, a two-year statute of limitations would also apply to such claims. *See* N.J. Stat. § 2A:14-2; *Montgomery v. DeSimone*, 159 F.3d 120, 126 n. 4 (3d Cir. 1998); *McGrogan v. Till,* 744 A.2d 255, 260 (N.J. Super. Ct. App. Div. 2000), *aff'd as modified*, 771 A.2d 1187 (N.J. 2001).

[3] Pursuant to the prisoner mailbox rule, the Court will consider the date Plaintiff signed and presumably mailed his Complaint, as the filing date.

Accordingly, the statute of limitations bars Plaintiff's 2014 claims, and the Court will grant Defendant's motion for summary judgment as to those claims.

### B. Remaining Claims and Exhaustion

Next, Defendant contends that summary judgment is appropriate because Plaintiff has failed to exhaust his administrative remedies as to all of his claims. As detailed above, because of a mailing issue, the parties dispute when and if Plaintiff exhausted his administrative remedies as to his 2014 claims. Since the Court has already dismissed those claims on statute of limitations grounds, the Court will only address the issue of exhaustion as to Plaintiff's claims stemming from January 22, 2016. On that date, Plaintiff contends that Defendant refused to provide him with a knee brace and would not bother looking for one, despite knowing of Plaintiff's medical need for the brace.

The PLRA, codified as 42 U.S.C. § 1997e, precludes prisoners from contesting prison conditions in federal court until exhausting "all avenues of relief available to them within their prison's inmate grievance system." *Spruill v. Gillis*, 372 F.3d 218, 227 (3d Cir. 2004). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Coulston v. Glunt*, 665 F. App'x 128, 132 (3d Cir. 2016).

A plaintiff must pursue to completion all available administrative remedies, even if they are not "plain, speedy, and effective," do "not meet federal standards," or could not result in the requested relief. *Porter*, 534 U.S. at 524.  The prisoner must "carry the grievance through any available appeals process" in order to successfully exhaust his claim. *Camino v. Scott*, No. 05–4201, 2006 WL 1644707, *4 (D.N.J. June 7, 2006) (citing *Spruill*, 372 F.3d at 232).

These requirements serve three important functions: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761–62 (3d Cir. 1996).

Failure to exhaust is an affirmative defense, and as such, defendants have the burden to plead and prove that a plaintiff has failed to exhaust. *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013).  To determine whether a prisoner has exhausted his administrative remedies, the Court looks to the agency's applicable grievance procedures and rules, in this case, the BOP. *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

The BOP Administrative Remedy Program, 28 C.F.R. § 542.10 *et seq*., provides for review of inmate grievances at the institutional, Regional, and Central Office levels.  Inmates must first present grievances informally, and then if dissatisfied with the informal resolution, the inmate must submit a written administrative remedy request. 28 C.F.R. §§ 542.13–542.14.  If the inmate is not satisfied with the warden's response, he may appeal to the Regional Director, and then to the Central Office, General Counsel. 28 C.F.R. § 542.15(a).  An appeal to the General Counsel is the final administrative appeal. *Id*.  The General Counsel shall respond to the final appeal within 40

calendar days, and if the inmate receives no response within that time, he may consider it a denial. 28 C.F.R. § 542.18.

With those principles in mind, the Court finds that Plaintiff has failed to exhaust his 2016 claims against Defendant.  According to the BOP's records, Plaintiff did not file any grievances between May 2015 and July 2019. (ECF No. 50-1, at 2).  Plaintiff did not respond to this specific failure and does not allege any facts that would permit the Court to find that exhaustion would be futile or that requiring exhaustion would subject Plaintiff to irreparable injury.  Accordingly, the PLRA bars Plaintiff's 2016 claims against Defendant, and the Court will grant summary judgment as to those claims.

## IV.  CONCLUSION

For the foregoing reasons, Court will grant Defendant Newbury's motion for summary judgment and deny Plaintiff's "motion to consolidate"[4] as moot.  An appropriate Order follows.

DATED:  September  7,  2020                           s/Robert B. Kugler
                                                      ROBERT B. KUGLER
                                                      United States District Judge

---

[4] By "consolidate," it appears that Plaintiff wishes to make clear that he is asserting claims against Defendant Newbury for the events in 2014 and in 2016.